UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RICHARD DI POMPO,

                                        Plaintiff,

      - against -

VILLAGE OF BREWSTER POLICE OFFICER
M. MENDELSON, BADGE SHIELD # 22,

                                        Defendant.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 21-CV-1340 (CS)

<u>Appearances</u>:

Pamela Gabiger
Poughkeepsie, New York
*Counsel for Plaintiff*

David L. Posner
McCabe & Mack LLP
Poughkeepsie, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

      Before the Court is Defendant Mendelson's motion for reconsideration of portions of the

Court's February 15, 2022 Order.  (ECF No. 18.)

## I.     **BACKGROUND**

      The background of this matter is set forth more fully in the February 15, 2022 Order, in

which I dismissed all claims in Plaintiff's Amended Complaint except for a Fourth Amendment

claim against Officer Mendelson for allegedly pulling Plaintiff over without reasonable suspicion

or probable cause.  (ECF No. 17.)

      Plaintiff initiated this action on February 5, 2021, in the Supreme Court of New York,

Putnam County.  (ECF No. 1-2.)  Defendants removed the case to this Court on February 16,

2021.  (ECF No. 1.)  Plaintiff filed his Amended Complaint on April 23, 2021.  (ECF No. 10.)
On May 24, 2021, Mendelson and the Village of Brewster[1] moved to dismiss the Amended
Complaint pursuant to Rules 12(b)(5) and 12(b)(6).  (ECF Nos. 11-14.)  They argued, as relevant
here, that (1) Plaintiff had failed to properly serve Defendant Mendelson; and (2) Plaintiff failed
to state a Fourth Amendment claim against Defendant Mendelson.  (*See* ECF No. 14 at 4-6, 15-
16.)

        In support of their argument that Mendelson had never been served, Defendants filed an
affidavit from Mendelson, in which he asserts that he was not served with the complaint
personally, or by mail or hand delivery to his home or his place of employment.  (ECF No. 13.)
On June 23, 2021, Plaintiff filed an affirmation signed by counsel, instead of a memorandum of
law, as required by Local Rule 7.1.  (*See* ECF No. 15.)  In response to Defendants' argument that
Mendelson had never been properly served, Plaintiff attached an Affirmation of Service, signed
by Plaintiff's counsel under penalty of perjury, in which counsel asserts that on February 5, 2021
– prior to removal – she personally served "Village of Brewster Clerk and Treasurer, Michelle
Chiudina who stated that she was authorized to receive the summons and complaints on behalf of
the 3 defendants . . . including Police Officer M. Mendelson."  (*Id.* at 4.)[2]  With their reply brief,
Defendants filed a sworn affidavit from Ms. Chiudina, in which she asserts that (1) she
acknowledged the receipt of papers delivered by Plaintiff's attorney but never stated that she was

---

        [1] All claims against the Village were dismissed in the Court's February 15, 2022 Order.
(*See* ECF No. 17.)

        [2] Despite counsel's reference to "the 3 defendants," Plaintiff's original and amended
Complaints only named the Village of Brewster and Officer Mendelson.  (*See* ECF Nos. 1-2,
10.)

legally authorized to receive papers on behalf of Mendelson; and (2) she is not an agent authorized to receive service on behalf of Mendelson.  (ECF No. 16-1 ¶¶ 6, 8.)

On February 15, 2022, the Court issued an Order granting Defendants' motion to dismiss in part.  (ECF No. 17.)  In that Order, the Court did not address Defendants' motion under Rule 12(b)(5) or their arguments about improper service.  On February 23, 2022, Defendant Mendelson filed the instant motion for reconsideration.  (ECF No. 18.)

## II.   <u>LEGAL STANDARD</u>

"Motions for reconsideration are governed by Local Civil Rule 6.3 and are committed to the sound discretion of the district court."  *Reddy v. Salvation Army*, No. 06-CV-5176, 2008 WL 4755733, at *1 (S.D.N.Y. Oct. 27, 2008).  A court may grant reconsideration where the moving party "demonstrates an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (cleaned up), *aff'd sub nom. Lowinger v. Morgan Stanley & Co.*, 841 F.3d 122 (2d Cir. 2016).  Reconsideration of a prior order is "an extraordinary remedy to be employed sparingly," and "[t]he burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might materially have influenced its earlier decision."  *Id.* (cleaned up).

"The purpose of a motion to reconsider is to allow the court to correct its own mistake, by calling to its attention a factual matter or a controlling precedent previously advanced by the parties, but overlooked by the court."  *DeJean v. County of Nassau*, No. 06-CV-6317, 2007 WL 4555897, at *1 (E.D.N.Y. Dec. 18, 2007).  Consequently, "[a] party seeking reconsideration may neither repeat arguments already briefed, considered and decided, nor advance new facts, issues

or arguments not previously presented to the Court."  *In re Facebook*, 43 F. Supp. 3d at 373

(cleaned up).

## III.    <u>DISCUSSION</u>

Defendant moves for reconsideration on two grounds:  (1) the Court failed to address his

argument that the case must be dismissed under Rule 12(b)(5) because Mendelson had never

been properly served; and (2) the Court erred in determining that Plaintiff stated a claim under

the Fourth Amendment based on his allegation that he was pulled over by Mendelson without

reasonable suspicion or probable cause.

### A.    <u>Service of Process</u>

Because the Court's February 15, 2022 Order failed to address Defendant's Rule 12(b)(5)

motion, reconsideration of those arguments is appropriate.

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss a

case for "insufficient service of process."  Fed. R. Civ. P. 12(b)(5).  "When a defendant raises a

Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of

proving its adequacy."  *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y.

2003) (cleaned up).  "But, where a court has not conducted a full-blown evidentiary hearing on

the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own

affidavits and supporting materials."  *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d

161, 173 (E.D.N.Y. 2015) (cleaned up); *see Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899,

904 (2d Cir. 1981) ("[U]ntil such a hearing is held, a prima facie showing suffices,

notwithstanding any controverting presentation by the moving party, to defeat the motion.").  To

make the requisite *prima facie* showing, "the plaintiff must aver facts that, if credited by the

ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Garnett-Bishop*

*v. N.Y. Cmty. Bancorp, Inc.*, No. 12-CV-2285, 2014 WL 5822628, at *10 (E.D.N.Y. Nov. 6, 2014) (cleaned up).

Because Plaintiff's only attempt at service occurred prior to removal of the case from New York state court, the Court analyzes whether service was proper under the relevant provisions of New York law. *See Millet v. Selip & Stylianou LLP*, No. 15-CV-773, 2020 WL 979787, at *1 (W.D.N.Y. Feb. 28, 2020) ("In considering a motion to dismiss for insufficient service in cases removed to federal court and where service was attempted only before removal, the propriety of service is determined by reference to state law."). In New York, personal service may be made by, among other methods, "delivering the summons within the state to the agent for service of the person to be served as designated under rule 318." N.Y. C.P.L.R. 308(3). C.P.L.R. 318, in turn, provides:

> A person may be designated by a natural person . . . as an agent for service in a writing, executed and acknowledged in the same manner as a deed, with the consent of the agent endorsed thereon. The writing shall be filed in the office of the clerk of the county in which the principal to be served resides or has its principal office.

N.Y. C.P.L.R. 318. "[W]hile some New York courts have interpreted a Section 308(3) 'agent' as an appointee other than one named pursuant to Rule 318, it is clear that the designation of an individual to receive service of process must be clear and with the knowledge of the defendant sought to be served." *Jackson v. County of Nassau*, 339 F. Supp. 2d 473, 477 (E.D.N.Y. 2004) (collecting cases); *see Shea v. Kralik*, 633 N.Y.S.2d 178, 179 (App. Div. 1995) ("[S]ince the appellant never designated the person who accepted service as an agent to accept service in accordance with CPLR 318, service was ineffective.").

Plaintiff's counsel affirms that she personally served "Village of Brewster Clerk and Treasurer, Michelle Chiudina who stated that she was authorized to receive the summons and complaints on behalf of the 3 defendants . . . including Police Officer M. Mendelson." (ECF No.

15 at 4.)  But Ms. Chiudina's purported statement cannot establish that she was Mendelson's appointed agent for service, because "representations made by an individual who accepts the service of process are not binding on the defendant in the absence of proof that the defendant himself knew of such representations." *Broman v. Stern*, 567 N.Y.S.2d 829, 831 (App. Div. 1991) (collecting cases); *cf. Hallock v. State*, 64 N.Y.2d 224, 231 (1984) ("The agent cannot by his own acts imbue himself with apparent authority.  Rather, the existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal – not the agent.") (cleaned up).  For example, "an attorney who agrees to accept service on behalf of individual defendants does not automatically become an agent for the acceptance of process, in the absence of proof that his clients actually knew of that representation." *Broman*, 567 N.Y.S.2d at 831 (cleaned up). Here, the relationship between Ms. Chiudina, the "Clerk and Treasurer" of the Village of Brewster, and Mendelson, a police officer, is far more indirect than that between a client and his lawyer, and the mere fact that both individuals are Village employees does not suggest that Mendelson appointed Ms. Chiudina as his agent for service of process.

Because Plaintiff has failed to "aver facts" that "would suffice to establish" that he served an agent for service of Mendelson, as defined in C.P.L.R. 308 and 318, and he has not put forth facts that demonstrate any other acceptable mode of service, he has failed to make a *prima facie* showing that Mendelson was properly served. *See Garnett-Bishop*, 2014 WL 5822628, at *10.[3]

---

[3] Plaintiff does not represent that process was also mailed to Mendelson, in addition to delivery to Ms. Chiudina.  Nor has Plaintiff shown that the Town Hall, as opposed to the Police Department, was Mendelson's actual place of business.  As such, the Court agrees with Defendant that Plaintiff has failed to demonstrate service compliance with N.Y. C.P.L.R. 308(2). (*See* ECF No. 16 at 4-5.)

Plaintiff's ninety days to properly serve the complaint under Rule 4(m) have passed, and Plaintiff has not shown good cause why the Court should extend its time to serve Mendelson. *See Ping Chen ex rel. United States v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013) (good cause to extend time to serve "generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control") (cleaned up); *see Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 591 (S.D.N.Y. 2006) (to the same effect) (collecting cases).  Plaintiff has not argued, and the record does not reflect, that his failure to properly serve Mendelson is the result of exceptional circumstances.  Indeed, Plaintiff provides no explanation at all for the invalid service.

Even absent a showing of good cause, a court may, in its discretion, extend the time for a plaintiff to complete service.  *See* Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment (amended Rule "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown"); *Zapata v. City of N.Y.*, 502 F.3d 192, 196 (2d Cir. 2007) ("[D]istrict courts have discretion to grant extensions even in the absence of good cause.").  But a district court is never required to grant an extension in the absence of good cause, and absent "some colorable excuse for neglect," the Court is within its discretion to decline to grant an extension.  *Zapata*, 502 F.3d at 197.  Defendant's first objections to service came ten months ago, and Plaintiff has not, despite two opportunities to brief the issue, offered any excuse or even sought an extension of his time to effect service properly.  Accordingly, and considering the four factors laid out in *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 66 (S.D.N.Y. 2010),[4] the Court declines to exercise its discretion and grant an extension *sua sponte*.

Accordingly, what remains of Plaintiff's Amended Complaint against Mendelson is dismissed without prejudice under Rule 12(b)(5).  *See In re S. Afr. Apartheid Litig.*, 643 F. Supp. 2d 423, 431-32 (S.D.N.Y. 2009) ("Absent perfected service, a court lacks jurisdiction to dismiss an action with prejudice; therefore dismissal pursuant to Rule 12(b)(5) must be without prejudice."); *see* Fed. R. Civ. P. Rule 4(m).

## B.   Fourth Amendment Seizure

Defendant characterizes as an "error of law" the Court's determination that Plaintiff pleaded a Fourth Amendment violation by alleging that he was pulled over without probable cause or reasonable suspicion.  (ECF No. 19 at 2.)  Defendant's argument boils down to the proposition that "a traffic stop, without more, is not a Fourth Amendment seizure."  (ECF No. 16 at 2.)  But that is simply an incorrect statement of the law.  *See, e.g.*, *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth

---

[4] Those factors are

(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by the extending plaintiff's time for service.

*DeLuca*, 695 F.Supp.2d at 66.  Plaintiff will have time to re-file this case before the three-year statute of limitations runs on his § 1983 claim.  *See Burroughs X v. Dorn*, No. 13-CV-3609, 2013 WL 6563153, at *1 (E.D.N.Y. Dec. 10, 2013) ("[T]he statute of limitations for a claim pursuant to § 1983 for a Fourth Amendment violation occurring in New York is three years.").  Even though the other factors weigh somewhat in Plaintiff's favor, they do not persuade the Court to grant an extension that has not been requested.

Amendment. . . .  [T]o justify this type of seizure, officers need only 'reasonable suspicion' –
that is, a particularized and objective basis for suspecting the particular person stopped of
breaking the law.") (cleaned up); *Brendlin v. California*, 551 U.S. 249, 255 (2007) ("The law is
settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver even though
the purpose of the stop is limited and the resulting detention quite brief."); *Whren v. United
States*, 517 U.S. 806, 809-10 (1996) ("Temporary detention of individuals during the stop of an
automobile by the police, even if only for a brief period and for a limited purpose, constitutes a
'seizure' of 'persons' within the meaning of [the Fourth Amendment].").  As such, Defendant
can point to no controlling precedent that the Court overlooked.

Defendant argues that the Court erred "by parsing the event into two separate
components for the 4th Amendment analysis:  the stop and then independent of the stop the
issuance of the traffic tickets."  (ECF No. 19 at 3.)  But he provides no authority that establishes,
or even suggests, that this analysis is erroneous.  Defendant cites *Burg v. Gosselin*, 591 F.3d 95
(2d Cir. 2010), and argues that because a pre-arraignment non-felony summons does not
constitute a seizure, the stop that led to the issuance of such a summons is also not a seizure, (*see*
ECF No. 19 at 3).  But *Burg* addresses only whether the legal requirements of the summons itself
– requiring a single court appearance – imposed restrictions on the recipient's liberty that
amounted to a Fourth Amendment seizure.  *Burg*, 591 F.3d at 97-101.  *Burg* did not even involve
a traffic stop; the officer there went to the plaintiff's house to ticket her.  *Id.* at 96.  That case
does not support the proposition that a stop is not a seizure if the only result of the stop is a
summons that does not constitute a seizure.  On the contrary, by noting that the plaintiff's "sole
claim [wa]s for an unreasonable seizure under the Fourth Amendment premised on the
summons's requirement that [plaintiff] later appear in court at a specified date and time" and that

the plaintiff did not argue "that she was detained or seized while [defendant] wrote out the summons," *Burg* suggests that two separate inquiries would be appropriate in a case where the plaintiff challenged both the nature of the stop and the effect of the summons. *Id.* at 96 n.3.

Defendant's citation to *Rodriguez v. United States*, 575 U.S. 348 (2015) is similarly inapt. *Rodriguez* addresses the permissible duration of a traffic stop where the "seizure [is] justified only by a police-observed traffic violation." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). This reaffirms the principle that a traffic stop is a seizure that must be justified by reasonable suspicion. Thus where, as here, a plaintiff alleges the seizure was unreasonable because it was not justified by "probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity," he has pleaded a Fourth Amendment violation. *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017).

Defendant's remaining arguments similarly fail to present controlling authority that the Court overlooked or otherwise convince the Court that reconsideration is appropriate here. Defendant protests that "[t]he constitution should not be trivialized," (ECF No. 19 at 4), but the well-established and controlling tenets of Fourth Amendment law discussed above do not implicate that principle. Nor do I think the ruling here will result in every motorist who contests a ticket becoming a § 1983 plaintiff, turning the federal courts into traffic courts, as Defendant suggests. (ECF No. 19 at 3-4.) Such a motorist would only have a claim if he could prove that the officer had no reasonable basis for the stop, and even then, it would be a foolish case to pursue, given that any damages would be so little as to not be worth the trouble.[5]

_____

[5] As I noted in the February 15, 2022 Order, in Plaintiff's case "any damages for this violation, should Plaintiff prove it, would be limited to injury accruing during the period between

Accordingly, the Court denies Defendant's motion for reconsideration with regard to the remaining Fourth Amendment claim, and declines to dismiss that claim under Rule 12(b)(6).

**IV.**   **CONCLUSION**

For the foregoing reasons, Defendant's motion for reconsideration is GRANTED in part and DENIED in part.  Plaintiff's complaint is dismissed without prejudice pursuant to Rule 12(b)(5) as to Defendant Mendelson.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 18), and close the case.  The conference previously scheduled for April 20, 2022 at 10:45 a.m. is canceled.

**SO ORDERED.**

Dated:  April 7, 2022
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

the stop and the officer's observation of the expired registration – in other words, would be minimal."  (ECF No. 17 at 4 n.2.)